United States District Court
Southern District of Texas
**ENTERED**
October 07, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESSICA GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-23-0038 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Jessica Garcia ("Plaintiff") was involved in a motor vehicle collision with a United States Postal Service driver and brings this negligence action against the United States of America ("Defendant").[1]  Pending before the court are Defendant United States of America's Motion for Partial Summary Judgment ("Defendant's MSJ") (Docket Entry No. 16) and Plaintiff's Motion in Limine (Docket Entry No. 19-7).  Defendant's MSJ argues that Plaintiff lacks causation evidence linking many of her injuries to the accident.  Although Plaintiff's causation evidence is scant and ambiguous, it is sufficient to survive a no-evidence summary judgment motion except as to Plaintiff's treatment at Prime Orthopedics.  Defendant's MSJ will therefore be granted in part and

---

[1]Plaintiff's Original Complaint, Docket Entry No. 1, p. 1 ¶ 1; Order, Docket Entry No. 9.  All page numbers refer to the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

denied in part. Because this is a bench trial, Plaintiff's Motion in Limine will be denied.

## I. Background

Plaintiff alleges that on January 15, 2021, Defendant's driver turned across Plaintiff's lane of traffic — failing to yield the right of way - and collided with Plaintiff's vehicle.[2] Plaintiff alleges a negligence claim against Defendant under the Federal Tort Claims Act.[3] Plaintiff has received medical care for a number of conditions (detailed below) in the years since and seeks damages including past and future medical care and expenses.[4]

Defendant filed its MSJ, Plaintiff responded, and Defendant replied.[5] Defendant argues that Plaintiff lacks sufficient causation evidence for injuries diagnosed after her initial emergency room visit on January 17, 2021.[6] In particular, Defendant argues that Plaintiff's diagnoses after that date are sufficiently complex and temporally removed from the collision that

---

[2] Id. at 3 ¶ 11.

[3] Id. at 2 ¶ 7, pp. 4-5 ¶¶ 14-20.

[4] Id. at 5-6 ¶ 23.

[5] Defendant's MSJ, Docket Entry No. 16; Plaintiff Jessica Garcia's Response to Defendant's Motion for Partial Summary Judgment ("Plaintiff's Response"), Docket Entry No. 17; Defendant's Reply in Support of Its Motion for Partial Summary Judgment, Docket Entry No. 18.

[6] Defendant's MSJ, Docket Entry No. 16, p. 7 ("Plaintiff Jessica Garcia claims complex injuries and extensive medical treatment resulting from the accident, but she lacks sufficient evidence on the causation element of her negligence claim.").

they require expert testimony to establish causation.[7]  Defendant
argues that Plaintiff has not designated any experts on the issue
of causation and that Plaintiff's medical records do not provide
sufficient causation opinions.[8]   Plaintiff responds that her
diagnoses made on January 25, 2021, can be linked to the collision
without expert causation evidence, that her designated physician
witnesses will testify to causation, and that the medical records
include sufficient causation evidence to survive summary judgment.[9]

    Attached to the Joint Pretrial Order is Plaintiff's Motion in
Limine.[10]  Defendant responded, arguing that a motion in limine is
improper because this case will be a bench trial.[11]

---

[7]Id. at 18 ("Garcia's injuries became more complex after that
and the temporal distance between the diagnoses of those injuries
and the accident became more significant, removing her conditions
from the scope of a layperson's common knowledge and experience.
Those injuries and conditions following her initial January 17
emergency room visit thus require expert evidence on causation.").

    [8]Id. at 22.

    [9]Plaintiff's Response, Docket Entry No. 17, pp. 5, 8 ("Each of
Plaintiff's medical records state that the injuries they treated
her for were caused by the motor vehicle collision that occurred on
January 15, 202[1]."), p. 9 ("Only ten days following the motor
vehicle accident caused by Defendant, Plaintiff sought treatment
from North Loop Minor Emergency Center because her pain was
persisting.  Specifically she complained of pain in her finger,
ankle, ear, shoulder, back, and neck along with tinnitus.  Ten days
is still close temporally to the accident, and it is reasonable
that such injuries would begin to manifest within that time frame,
creating a temporal through-line from the date of the accident.").

    [10]Plaintiff's Motion in Limine, Docket Entry No. 19-7.

    [11]Defendant's Response to Plaintiff's Motion in Limine, Docket
Entry No. 21, p. 1.

## II.  Legal Standards

### A.  Texas Negligence and Causation

"[L]iability under the FTCA depends on principles of negligence under state law[.]" Alexander v. United States of America, 605 F.2d 828, 832 (5th Cir. 1979). "The elements of a [Texas] common-law negligence claim are (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach." Elephant Insurance Co., LLC v. Kenyon, 644 S.W.3d 137, 144 (Tex. 2022). "The causal nexus between the event sued upon and the plaintiff's injuries must be shown by competent evidence." Guevara v. Ferrer, 247 S.W.3d 662, 666 (Tex. 2007). "[I]n limited circumstances, the existence and nature of certain basic conditions, proof of a logical sequence of events, and temporal proximity between an occurrence and the conditions can be sufficient to support a jury finding of causation without expert evidence." Id. at 667. In an automobile accident, expert causation testimony may not be necessary for injuries which "(1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents." Id. "For example, if [a plaintiff was] pulled from a damaged automobile with overt injuries such as broken bones or lacerations, and . . . he did not have such injuries before the accident, then the

-4-

physical conditions and causal relationship between the accident and the conditions would ordinarily be within the general experience and common knowledge of laypersons." Id.

But "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." Id. at 665. Temporal proximity between an event and onset of the plaintiff's medical conditions is relevant but cannot establish causation without more. See id. at 668.

**B.   Treating Physician Testimony**

According to Federal Rule of Civil Procedure 26(a)(2), experts that are not retained to provide expert testimony in the case are not required to provide a written expert report. See Fed. R. Civ. P. 26(a)(2)(A) ("[A] party must disclose to the other parties the identity of any witness it may use at trial to present [expert testimony]."); Fed. R. Civ. P. 26(a)(2)(B) ("[T]his [expert testimony] disclosure must be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony in the case . . ."); Fed. R. Civ. P. 26(a)(2)(C) ("[I]f the witness is not required to provide a written report, this disclosure must state:  (i) the subject matter on which the witness is expected to present [expert testimony]; and (ii) a summary of the facts and opinions to which the witness is expected to testify."). "A treating physician is the prototypical expert "[A] treating physician may opine as to the causation of a

plaintiff's injuries and a plaintiff's prognosis as long as the doctor formed those opinions 'based on the care-provider's personal knowledge and observations obtained during the course of care and treatment.'" Kim v. Time Insurance Co., 267 F.R.D. 499, 502 (S.D. Tex. 2008).

## C.   Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact is or is not genuinely disputed must support the assertion by "citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 2554. "The burden shifts to the non-moving party to show, with competent evidence, the existence of a genuine dispute of material fact." Miller v. Michaels Stores, Inc., 98 F.4th 211, 216 (5th Cir. 2024). "The court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party." Id.

### III.  Summary Judgment Evidence

According to the police report, the front of Plaintiff's vehicle collided with the side of the USPS truck as it crossed Plaintiff's lane.[12]  Plaintiff testified in her deposition that the impact "threw" her and that she noticed bruises from the seatbelt, a welt on her forehead, and pain in one of her fingers.[13]  Plaintiff testified that by the time she went to the emergency room two days later, she had developed pain in her back, neck, and shoulder and a swollen right ankle.[14]

On January 17, 2021, Plaintiff went to Memorial Heights Emergency Center.[15]  The Physician Clinical Report, signed by Plaintiff's treating physician, documented Plaintiff's description of the collision, her symptoms, the results of a physical exam, and two CT scans.[16]  The "Clinical Impression" section lists:

Acute traumatic pain in the neck and middle back.

Acute neck pain associated with cervical strain.  No neuro deficit.

---

[12]Texas Peace Officer's Crash Report, Exhibit A to Plaintiff's Response, Docket Entry No. 17-1, p. 3 (Narrative and Diagram).

[13]Oral Deposition of Jessica Garcia ("Plaintiff's Depo."), Exhibit J to Plaintiff's Response, Docket Entry No. 17-10, p. 4 lines 16-17, p. 5 lines 7-10, 22.

[14]Id. at 13 lines 20-25, p. 14 lines 1-2, p. 16 lines 3-10.

[15]OrderSheet, Exhibit C to Plaintiff's Response, Docket Entry No. 17-3, p. 2.

[16]Physician Clinical Report, Exhibit C to Plaintiff's Response, Docket Entry No. 17-3, pp. 8-9.

> Acute traumatic thoracic back pain associated with muscle strain.
>
> Motor vehicle traffic collision involving a vehicle and another vehicle.  Car involved.  The patient was the driver of the car.[17]

Plaintiff was instructed to start physical therapy.[18]

On January 25, 2021, Plaintiff went to North Loop Minor Emergency Center ("NLMEC").[19] The Visit Note, signed by Plaintiff's treating physician, records Plaintiff's account of the collision, her symptoms, the results of a physical exam, and these diagnoses:

> Unspecified car occupant injured in collision with other motor vehicles in traffic accident, initial encounter
>
> Cervical disc disorder with radiculopathy, unspecified cervical region
>
> Intervertebral disc disorders with radiculopathy, thoracic region
>
> Other intervertebral disc degeneration, lumbar region
>
> Unspecified sprain of right shoulder joint, initial encounter
>
> Unspecified sprain of left shoulder joint, initial encounter
>
> Unspecified sprain of right ring finger, initial encounter

---

[17] Id. at 9.

[18] Id.

[19] North Loop MEC Initial Visit Note (1/25/21) ("Visit Note"), Exhibit D to Plaintiff's Response, Docket Entry No. 17-4, p. 2.

Tinnitus, left ear

Sprain of unspecified ligament of right ankle, initial encounter[20]

Plaintiff was prescribed medication and referred to chiropractic care for her spine and shoulders.[21]

On February 26, 2021, through March 24, 2021, Plaintiff went to Lindale Healthcare Clinic for chiropractic treatment.[22]  In a Final Report, the chiropractor diagnoses Plaintiff with anxiety, post-traumatic headache, dizziness and giddiness, insomnia, chest pain, a right ankle ligament sprain, and other conditions previously mentioned.[23]  The report concludes:

**Discussion**
In this traumatic injury, the effected soft tissues, which include muscles, tendons, ligaments and joint capsules have been stretched or torn. . . .

**Opinion**
It is my opinion, based upon the history as presented by the patient, the examination and test findings that the injuries sustained by the patient were within a reasonable medical probability sustained as a result of the accident that occurred on the above-referenced date.[24]

---

[20]Id. at 3-4.

[21]Id. at 4.

[22]Medical Records Affidavit, Exhibit E to Plaintiff's Response, Docket Entry No. 17-5, p. 1.

[23]Lindale Healthcare Final Report 3/24/21, Exhibit E to Plaintiff's Response, Docket Entry No. 17-5, pp. 14-15.

[24]Id. at 15.

Starting on August 9, 2021, Plaintiff went to United Rehabilitation and Chiropractic Clinic 4 ("United Rehab").[25] Plaintiff received the following diagnoses:

> Motor vehicle accident initial encounter
>
> Cervical spine somatic and segmental dysfunction
>
> Thoracic spine, segmental and somatic dysfunction
>
> Lumbar spine, segmental and somatic dysfunction
>
> Pain in the right finger
>
> Right ankle pain
>
> Muscle spasm of back[26]

Plaintiff did not return for a final evaluation and was automatically discharged.[27]

Starting on July 29, 2021, Plaintiff went to Houston Spine & Joint Pain-Katy.[28]   Plaintiff was diagnosed with conditions including cervicalgia and lumbago.[29]   The physician concluded:

> Within all medical probability and based on all the records available to me and the medical history, explanation of the patient[']s symptoms, my diagnosis and treatment plan is medically necessary and directly related to the reported injury in HPI.[30]

---

[25]Medical Records Affidavit, Exhibit F to Plaintiff's Response, Docket Entry No. 17-6, p. 1.

[26]Final Report, Exhibit F to Plaintiff's Response, Docket Entry No. 17-6, p. 17.

[27]Id. at 19.

[28]Medical Records Affidavit, Exhibit G to Plaintiff's Response, Docket Entry No. 17-7, p. 1.

[29]History and Physical, Exhibit G to Plaintiff's Response, Docket Entry No. 17-7, p. 7.

[30]Id.

Over the next few months Plaintiff received treatment, including a nerve block and steroid injections to help with her back pain.[31]

Starting on April 22, 2022, Plaintiff went to Prime Orthopedic for right ankle pain.[32]  The "Subjective" portion of the initial Progress Note states in part:  "Patient here today for right ankle pain.  She sustained a MVA injury where her foot was caught between the gas pedal and brake.  The injury occurred in 2020.  She was not diagnosed with a right ankle injury until sometime in 2021."[33]  Based on x-rays, an MRI, and a clinical exam, the physician concluded that Plaintiff had "1) anterior ankle joint impingement with functional ankle ligament instability.  2) soft tissue cysts in the posterior medial ankle on MRI report and this cor[r]elates with her symptoms.   3) symptomatic posterior ankle joint impingement with symptomatic os trigonum."[34]   Plaintiff had orthopedic surgery to remove a soft tissue mass from her ankle and to repair a "right talus osteochondral lesion."[35]

--------

[31]E.g., Houston Spine & Joint Pain-Greenbriar Procedure Note, Exhibit G to Plaintiff's Response, Docket Entry No. 17-7, pp. 8, 24.

[32]Prime Orthopedic Progress Note, Exhibit H to Plaintiff's Response, Docket Entry No. 17-8, p. 2.

[33]Id.

[34]Id. at 3.

[35]Operative Report, Exhibit H to Plaintiff's Response, Docket Entry No. 17-8, p. 8.

On July 12, 2022, Plaintiff went to West Houston Brain and Spine.[36]  Plaintiff's treating physician conducted a physical exam and reviewed her past MRIs.[37]  The "Assessment" part of the visit record states:

> Mrs. Garcia presents with neck pain, low back pain, right ankle pain.  Her symptoms began following MVC on 1/15/20.  She was restrained driver, struck from passenger side.  No LOC, no airbags.  Her pain increased following day. . . .  I reviewed her imaging.  MRIs from 3/17/21 and 6/2/21. . . .  Thoracic MRI reveals mild degenerative disc disease.  Lumbar MRI reveals small left L5/s1 synovial cyst with no stenosis.[38]

## IV.  Analysis

Defendant does not argue that expert causation testimony is necessary for diagnoses made during Plaintiff's January 17, 2021, emergency room visit.  The parties disagree whether expert causation testimony is necessary for diagnoses first made at Plaintiff's January 25, 2021, visit to NLMEC.  As to all diagnoses made after January 17, 2021, the parties disagree whether Plaintiff's medical records include sufficient expert causation evidence to survive summary judgment.

## A.  Which Diagnoses Require Expert Causation Evidence

Since this is an automobile collision action, the <u>Guevara</u> exception to the expert testimony requirement covers injuries that

---

[36]New patient note, Exhibit I to Plaintiff's Response, Docket Entry No. 17-9, p. 1.

[37]<u>Id.</u> at 2-3.

[38]<u>Id.</u> at 3.

"(1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents." 247 S.W.3d at 667.   Sprains are within the common knowledge of laypersons.   Common sense also suggests that a car accident impacting the front of Plaintiff's vehicle could cause the diagnosed sprains — shoulder, finger, and ankle — especially because those body parts make contact with the seat belt, steering wheel, and pedals, respectively.   Plaintiff testified that pain or swelling in those areas developed soon after or in the days following the accident.

However, disc disorders, radiculopathy, and tinnitus (and whether they are caused by car accidents) are not within the common knowledge of laypersons.   Therefore, although Plaintiff's sprains diagnosed during her first visit to NLMEC do not require expert causation testimony, her disc disorders, radiculopathy, and tinnitus do.

**B.   Causation Evidence in Plaintiff's Medical Records**

In Plaintiff's medical records from NLMEC, Lindale, United Rehab, Houston Spine & Joint, and West Houston Brain & Spine, the treating physician or chiropractor documented Plaintiff's account of the car accident under an Introduction, Subjective, or History of Present Illness section and either records the car accident as a diagnosis, includes the details of the accident in their

-13-

"Assessment," or concludes explicitly that Plaintiff's injuries probably resulted from the accident. Viewing the records in the light most favorable to Plaintiff and drawing every reasonable inference in her favor, the fact that a physician records the car accident in the diagnosis section (while noting no other possible causes) suggests that he believes it at least partly caused Plaintiff's conditions. Defendant's MSJ will therefore be denied as to Plaintiff's treatment at NLMEC, Lindale, United Rehab, Houston Spine & Joint, and West Houston Brain and Spine. However, this does not mean that the medical records are strong causation evidence or that the court, as fact-finder, will find causation without more certain and detailed testimony from Plaintiff's treating physicians, stating and explaining their causation opinions as to each diagnosis.

It is not reasonable to infer a causation opinion from Plaintiff's Prime Orthopedics records. The Subjective section records Plaintiff's statement that "[s]he sustained a MVA injury where her foot was caught between the gas pedal and brake."[39] But the Objective, Results, Assessment, and Plan sections do not mention the accident or make any conclusions as to the cause of Plaintiff's ankle problems.[40] Plaintiff lacks any expert opinion connecting the Prime Orthopedics diagnoses to the car accident.

---

[39]Prime Orthopedic Progress Note, Exhibit H to Plaintiff's Response, Docket Entry No. 17-8, p. 2.

[40]Id. at 3.

Defendant's MSJ will therefore be granted as to Plaintiff's diagnoses and treatment at Prime Orthopedics.

## C.  The Proper Scope of Treating Physicians' Causation Testimony

Defendant raises in the Joint Pretrial Order the proper scope of testimony of a treating physician designated as non-retained expert witness.  The court clarifies for the parties' benefit. "[T]he treating-physician exception to the expert report requirement applies only when the treating physician's opinion testimony is based on personal knowledge obtained from examining and treating an individual." MedARC, 618 F. Supp. 3d at 374; Kim, 267 F.R.D. at 502 ("[A] treating physician may testify as a non-retained expert witness-and therefore need not provide an expert report-if the testimony is confined to 'facts disclosed during care and treatment of the patient.'").  In other words, Plaintiff may not ask a treating physician to draw conclusions from a wider body of facts than what was disclosed to him during treatment.

This applies to causation opinions as well. See Kim, 267 F.R.D. at 502 (agreeing with courts that allow treating physicians to "opine as to the causation of a plaintiff's injuries and a plaintiff's prognosis as long as the doctor formed those opinions 'based on the care-provider's personal knowledge and observations obtained during the course of care and treatment[]'").

Defendant cites an opinion of this court stating that "[a] treating physician may only testify about causation to the extent

that determining causation was a necessary part of the treatment[.]" Carmona v. Forrest, Civil Action H-20-3922, 2023 WL 4317036, at *7 (S.D. Tex. June 15, 2023), report and recommendation adopted, Civil Case No. 4:20-CV-03922, 2023 WL 4317184 (S.D. Tex. June 30, 2023). To the extent "necessary" means that determining causation was relevant or helpful to treatment (as opposed to indispensable). This is consistent with the personal-knowledge requirement expressed in Kim and MedARC, and the court agrees.

### V.   Conclusion and Order

With the exception of her diagnoses and treatment at Prime Orthopedics, Plaintiff's medical records are sufficient to raise a fact issue as to whether her injuries were caused by the car accident with Defendant's driver.   Defendant United States of America's Motion for Partial Summary Judgment (Docket Entry No. 16) is therefore **GRANTED** as to Plaintiff's diagnoses and treatment at Prime Orthopedics and **DENIED** as to all other alleged injuries.

"In a bench trial, [motions in limine] are unnecessary, as the Court can and does readily exclude from its consideration inappropriate evidence of whatever ilk." Cramer v. Sabine Transportation Co., 141 F. Supp. 2d 727, 733 (S.D. Tex. 2001); In re Watkins, 343 F. App'x 245, 246 (9th Cir. 2009) ("[I]n a bench trial, the need for an advanced ruling on a motion in limine to

exclude evidence is 'generally superfluous' and unnecessary.").
Plaintiff's Motion in Limine (Docket Entry No. 19-7) is therefore
**DENIED**.

      **SIGNED** at Houston, Texas, on this 7th day of October, 2024.

                                        SIM LAKE
                          SENIOR UNITED STATES DISTRICT JUDGE